# STATE OF MICHIGAN

# COURT OF APPEALS

LALE ROBERTS and JOAN ROBERTS,

        Plaintiffs-Appellants,

v

KATHRYN SALMI, LPC, d/b/a SALMI
CHRISTIAN COUNSELING,

        Defendant-Appellee.

FOR PUBLICATION
December 18, 2014

No. 316068
Houghton Circuit Court
LC No. 2012-015075-NH

Before: MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

While the majority lays out a strong policy argument in favor of the conclusion that we should create a duty between a therapist and a patient's parents under the circumstances of this case, I nonetheless believe that represents a policy decision best left to the Legislature. In reaching this conclusion, I am guided by the wisdom expressed by the Supreme Court in *Henry v The Dow Chemical Co*.[1] While the majority correctly points out that the facts, as well as the specific question presented, is significantly different than those presented in our case, the more fundamental jurisprudential question is the same: when should a court exercise its authority to modify the common law and recognize a duty in tort law and when is that determination best left to the Legislature?

In *Henry*,[2] the Court noted the extensive fact-finding and resolution of conflicting policy concerns that would be required:

> Although we recognize that the common law is an instrument that may change as times and circumstances require, we decline plaintiffs' invitation to alter the common law of negligence liability to encompass a cause of action for medical monitoring. Recognition of a medical monitoring claim would involve

---

[1] 473 Mich 63; 701 NW2d 684 (2005).

[2] *Id.* at 68-69.

extensive fact-finding and the weighing of numerous and conflicting policy concerns. We lack sufficient information to assess intelligently and fully the potential consequences of recognizing a medical monitoring claim.

Equally important is that plaintiffs have asked this Court to effect a change in Michigan law that, in our view, ought to be made, if at all, by the Legislature. Indeed, the Legislature has already established policy in this arena by delegating the responsibility for dealing with health risks stemming from industrial pollution to the Michigan Department of Environmental Quality (MDEQ). As a matter of prudence, we defer in this case to the people's representatives in the Legislature, who are better suited to undertake the complex task of balancing the competing societal interests at stake.

The same concerns, and the same need for prudence, exist in the instant case. Plaintiffs' claim is, in essence, that defendant relied upon "junk science" as a therapy method, which resulted in the creation of a false memory. It is far outside the expertise of this Court, or any future jury for that matter, to determine what is, or is not, an appropriate therapy method. It would seem to me that this is a question better left to the Legislature to address, or for the Legislature to delegate to an appropriate regulatory body with the expertise to determine under what circumstances a therapy method may be utilized, if at all. Under these circumstance, a court could entertain a claim that a therapist used a prohibited method, or utilized a method outside the circumstances approved for its use.

Moreover, this case presents a plethora of competing policy considerations. For example, as is often the case in the health professions, a particular approach to treatment or diagnosis presents potential benefits to the patients, but is often accompanied by some risk as well. And while we impose upon the health care professional the obligation to assess those benefits and risks in recommending a particular treatment or test to the patient, what the majority would do here imposes another level of risk-benefit analysis to the professional: what are the risks and benefits to the patient's parents? While these risks and benefits may often be aligned between patient and parent, it can hardly be taken for granted by this Court. It is possible that adding this additional duty may well create a conflict in the exercising of professional judgment where meeting the duty owed to one may constitute a breach of a duty to the other. I suggest that the determination whether such a conflict exists and, if so, how it should be resolved is best left to the Legislature's investigative and policy resolution functions.

This is particularly true given that this particular case represents an area that has not been ignored by the Legislature. The Legislature has addressed policy issues not irrelevant to this case. For example, the Legislature has created a policy of mandatory reporting of child abuse.[3] The Legislature has also addressed the question of privilege in these contexts.[4] The creation of a duty to the parents of a child being treated for abuse, or where abuse is discovered during the

---

[3] MCL 722.623.

[4] See MCL 330.1750.

course of treatment for something else, may well be at odds with these legislative policy determinations. Prudence would dictate that the Legislature should determine how such a duty may, or may not, fit into the legislative policy determinations in this area.

The California Court of Appeals made a similar observation in *Trear v Sills*.[5] Under the heading "A Therapist Should Not Be Required to Serve Two Masters," the court[6] said as follows:

> Indeed, the law would hardly impose upon a *lawyer* the duty to refrain from negligently doing harm to his or her client's adversary. (E.g., *Norton v Hines* (1975) 49 Cal. App. 3d 917, 921 [123 Cal. Rptr. 237].) An attorney is not even required to believe that his or her client would prevail in a court of law in order to avoid liability for malicious prosecution--a sin rather more grievous than mere negligence. If an attorney who cannot know the absolute truth of a client's position has no duty in negligence toward the client's adversary, how much less of a reason is there to impose a duty on a therapist, who must, by necessity, choose between possible harm to a patient if a recovered memory story is not believed and harm to a possible abuser if the patient's recovered memory story is believed. If therapists are to be put in what is so obviously an untenable position, it should be by the Legislature, not the legal fiat of appellate judges.

In the same vein, our Supreme Court in *Henry*,[7] summed it up best:

> It may be desirable that our tort law should expand to allow a cause of action for medical monitoring. But what we as *individuals* prefer is not necessarily what we as *justices* ought to impose upon the people. Our decision in this case is driven not by a preference for one policy or another, but by our recognition that we must not impose our will upon the people in matters, such as this one, that require a delicate balancing of competing societal interests. In our representative democracy, it is the legislative branch that ought to chart the state's course through such murky waters.

I find the waters in this case to be equally murky, and I too think it best to leave it to the Legislature to chart a course on this issue.

For these reasons, I would affirm.

/s/ David H. Sawyer

---

[5] 69 Cal App 4th 1341; 82 Cal Rptr 281 (1999).

[6] 69 Cal App 4th at 1352; 82 Cal Rptr at 289.

[7] 473 Mich at 98.